THE STATE OF ALABAMA VS. ABSENCE.

*As to indictments for mayhem.*

1. Where a statute adopts a common law offence, all the com_mon law requirements in defining the offence, should be followed in the indictment.
2. But, when a statute describes an act as a crime or misdemeanor of particular grade, the indictment need not state the legal conclusion, that such act amounts to such crime or misdemeanor.
4. Thus, in an indictment for mayhem, it is not essential to charge the offence to have been committed *feloniously*.
5. One indicted as principal in the second degree, for the offence of mayhem, may be guilty of the offence of beating, perpetrated by the principal in the first degree, without being guilty of the mayhem.
6. So, the charge of a Court, that if the principal in the first degree is guilty of mayhem, and the principal in the second degree has aided and abetted the fight—the latter would also be guilty of mayhem—would be too broad.

On points reserved from the Circuit Court of Dallas county.

In this case an indictment was preferred against Wiley Mosely and Elijah Absence, in the following terms:

"The State of Alabama, Dallas county—Circuit Court, Spring Term, 1836.

"The grand jurors for the county aforesaid, upon their oaths present, that Wiley Mosely, late of the county aforesaid, on the twenty-first day of March, A. D. eighteen hundred and thirty-six, with force and arms at ——, to-wit, in the county aforesaid, in and

upon one William E. Weaver, in the peace of the State then and there being, the right ear of him the said William E. Weaver, then and there on purpose, and of his malice aforethought, unlawfully did bite off. And the jurors aforesaid, upon their oaths aforesaid, do further present, that Elijah Absence, late of the county aforesaid, in the county aforesaid, with force and arms on the day and year aforesaid, unlawfully, and on purpose, and of his malice aforethought, was present, aiding and abetting and assisting the said Wiley Mosely, the said mayhem to do and commit; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Alabama."

Upon this indictment, a *capias* issued, which was executed upon Absence; and at Fall term, eighteen hundred and thirty-six, he was tried, and found guilty.

In the progress of the trial, the counsel for Absence requested the Court to charge the jury—that in order to convict the defendant of aiding and abetting in the commission of the mayhem, as charged in the bill of indictment, they should believe from the evidence, that the said Mosely intended to commit a mayhem: and that Absence was consonant of that intention. The Court refused to give this charge; but instructed the jury, that if they believed from the evidence that Mosely was guilty, as charged,—and that Absence did any act—such as pushing the said Weaver, the person maimed, toward Mosely, for the purpose of causing a fight between Weaver and Mosely, and a fight immediately ensued, in the course of which Mosely bit off the ear of Weaver, and there-

by committed a mayhem,—then Absence would be guilty as charged in the indictment, although wholly ignorant of any intention of Mosely to do more than commit an assault and battery.

The Court also overruled a motion in arrest of judgment. And the questions arising in the case were reserved for the opinion of this Court as novel and difficult.

This case was argued here by *Edwards* for Absence, and by the *Attorney-General* for the State.

GOLDTHWAITE, J.—An indictment was found by the grand jury of Dallas County, at the Spring term of the Circuit Court, held in the present year, charging one Wiley Mosely, as principal in the first degree, and the defendant, as principal in the second degree, in the terms of the statute of eighteen hundred and seven,[*] with biting off the ear of one Weaver. The plaintiff in error was tried and convicted at the fall term of that Court, held in the year eighteen hundred and thirty-six.

[* Aik. Dig. 102.]

At the trial, the presiding judge was requested to instruct the jury, that in order to convict the defendant, then on trial, of aiding and abetting the commission of the mayhem, as charged in the bill of indictment, they should believe, from the evidence, that the said Wiley Mosely, charged in the first part of the indictment, intended to commit a mayhem, and that the said defendant, Absence, was consonant of that intention. This the Court refused, but charged the jury, if they believed from the evidence, that Mosely was guilty, as charged in the indictment, and

that Absence did any act, such as pushing Weaver, the person maimed, toward the said Mosely, for the purpose of causing a fight between the said Weaver and the said Mosely, in the course of which the said Mosely bit off the ear of Weaver, and thereby committed a mayhem, the said Absence would be guilty as charged, though wholly ignorant of any intention of said Mosley to do more than commit an assault and battery.

After verdict, the defendant below moved to arrest the judgment—

1st. Because the first count of the indictment contains no reference to the statute.

2d. Because the act is not charged to have been done *feloniously*.

3d. Because the count does not contain the word " mayhem," " or maim."

4th. Because it does not conclude, " *against the peace and dignity of the State of Alabama.*"

5th. Because the word " *feloniously,*" is not contained in any part of the indictment.

6th. The term " mayhem," in the second count, or latter part of the indictment, is improperly inserted, as the word is not used elsewhere in the indictment.

7th. Because, in stating the charge against the defendant, Absence, there is no sufficient averment of time and place.

This motion was overruled ; but inasmuch as some of the questions presented were considered novel and difficult, the presiding Judge consented that all the points arising in the case might be reserved as novel and difficult, for the decision of this Court.

The indictment seems to be in the form pointed out

by the most usual and correct precedents, and contains only one count, which charges Mosely with committing the act, and Absence with being present, and aiding and assisting.

It is objected, however, that the statute having declared the biting off of an ear, to be mayhem, it was necessary to charge the individuals indicted, with this legal conclusion.   Hawkins, vol. 1, p. 107, and 2 Hawkins, 310, are relied on to establish this position.

It is admitted, if a statute adopts a common law offence, without otherwise defining the crime, all the common law requirements should be followed, in the indictment : thus our statutes affix the punishment of death to murder and rape, without attempting to define the crimes,—here, no doubt, the terms, "*murdravit* and "*rapuit*," would be essential; but when a statute describes a particular act or acts, as a misdemeanor or crime of a particular grade, it is not necessary, in an indictment, after charging the acts, to state the legal conclusion, that they amount to the misdemeanor or crime of the grade declared by statute—*because such is the conclusion of the law, on the facts alledged.*   The same reason is conceived applicable to the omission of the word " feloniously."   If the statute had declared, that all persons who should be guilty of the crime of mayhem, should be punished in a particular manner, without attempting to further define the offence, the question would properly arise on au indictment framed under such a statute, whether it was necessary to allege the mayhem to have been done feloniously.

It is sufficient to decide, that the word entering in-

4P                 51

to no part of the definition of this offence, as created by the statute, it was properly omitted in the indictment.

It is further urged, that there is no sufficient allegation of time and place, so far as Absence is noticed in the indictment.

The Court recognizes the authority of the rule requiring an averment of time and place, to each sub‑ stantive fact charged in the indictment.* But the indictment, it is believed, conforms to this rule with the utmost precision.

*Archb.;C. Pl. 36.

It follows, as the consequence of these views, that there was no error, in refusing to arrest the judgment in the Court below.

It is contended, that the charge asked for and refused, in the Court below, was correct, and that the charge given to the jury, can not be supported, on principle, in as much as the statute declares, that the maiming must be done on purpose, and of malice aforethought—it would involve an apparent absurdity, to convict one who never had assented to the act, and in the commission of which his will did not concur. In answer to this, it has been urged, that a man must be presumed to intend all the consequences which necessarily flow from his acts.

That this principle is well settled, and of universal application, is unquestionably the law.†

†4Black.C 197, 1Hale P.C.431; 1 East. C.L. 256.

What may be the necessary consequence of a particular act or command, may frequently be a question very difficult of decision.—Thus, it is said, (in 4th Blackstone's Commentaries, p. 37,) that if A command B to beat C, and B beats him, so that he dies, B is guilty of murder, as principal, and A as ac-

cessary; but the editor adds, in a note, that this must be understood with the qualification, that it refers to a case where the command was to beat violently.

With this qualification, which seems to be recognized by Lord *Hale* and Mr. *East*,[*] it would seem to follow, that the degree of the guilt of A must be regulated, in some degree, by the act of B— for, if the beating, though wholly unlawful, was to be slight and of such a character as could, in no wise, produce death, A ought not to be held guilty of murder, nor yet would he be innocent, if death did ensue, by the act of B, although B greatly exceeded his intentions.

The case put, in *East*, is this—if a man wilfully, with intent to hurt, though not to kill, throw a *large* stone, at another, and by accident it kill him, this is murder. It would seem to be manslaughter, only, if the stone was *small*, and not likely to produce death.

The Court below charged the jury, "*that if Mosely was guilty, as charged, and Absence had done any act, such as pushing Weaver towards Mosely, for the purpose of causing a fight, and a fight immediately ensued between Weaver and Mosely, in which the former bit his ear, then was the defendant Absence, guilty as charged.*"

The Court below seems to have predicated its charge on the principle before stated, and under the impression, that a person present aiding and abetting, must, of necessity, be guilty of the same offence as the principal actor, and culpable, in the same degree. But this is not universally true. Thus, if a

[*1 Hale, 442, 3, 4—1 East, P.C 257.]

master assaults another with *malice prepense*, and the servant, ignorant of his master's predetermined design, takes part with him, the servant is not an abetter of murder, but of manslaughter only.[*]

[*1 Hale, 406; Archb Cr. Pl. 6.]

So, in this case, Mosely may have formed the deliberate purpose to bite off the ear of his opponent, as well as to beat him, and Absence may have been present, aiding and abetting the beating, yet ignorant of, and not assenting to the mayhem.

This distinction is farther adverted to in a note to 4th Blackstone's Commentaries, p. 23, where it is observed, " that besides presence and aiding and abetting, there must be a *participation in the felonious design*, or, at least, the offence must be within the compass of the original intention, to constitute a principal in the second degree.

The Court has entertained great doubt, which is, by no means removed, whether an individual may not be guilty, under this act, without being the immediate actor, or conusant of his design to commit the particular mayhem,—as, where two should concert together to do some *great bodily harm* to another, and one only should be the actor, the other being present when the mayhem was committed. But, on this point the Court give no opinion, as they have arrived at the conclusion that the charge as given was too broad.

The judgment must be reversed and the cause remanded.