16 So.2d 303

**PATTILLO v. STATE.**

5 Div. 378.

Supreme Court of Alabama.

Jan. 13, 1944.

John J. Pruet, of Ashland, and J. Sanford Mullins, of Alexander City, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

BROWN, Justice.

The appellant shot and killed his father-in-law L. A. Wadsworth in front of the latter's home on River Drive in East Tallapoosa County, was indicted, tried and convicted of murder in the second degree, and as a punishment was sentenced, in accordance with the verdict of the jury, to the penitentiary for a term of twenty-two years.

The evidence adduced by the state goes to show that defendant, looking for his wife, drove up in front of Wadsworth's home and sounded the horn on his automobile. Wadsworth with his wife and the witness Henry Webster, the constable, were at the time back of the house, and when the horn was sounded Wadsworth and Webster came from behind the house to the front yard. Wadsworth stopped on the grassy knoll between the sidewalk and the paved street. After some words between deceased and defendant, as to the whereabouts of defendant's wife, and an effort on the part of Webster to passify the parties and persuade defendant to go on his way, a pistol battle ensued in which each of the parties fired several shots. The state's evidence tends to show that defendant fired the first shot just as Wadsworth and Webster turned to go back toward deceased's house, which entered the deceased's back. Deceased was hit three times. Stated in the language of

Dr. Fargason, the attending surgeon: "He was shot once right over the stomach just about an inch to the left of the mid line, that bullet ranging directly into the body, and shot once right over the right flank of the back in the soft part of his back, and once right through the top of his left ear here. Deceased died at the hospital from these wounds," within two hours from the time he was shot.

The evidence shows that one bullet hit the defendant in his right arm near the point of the shoulder and lodged under the scapula—the shoulder blade—within an inch or two of the spine, and tends to show that at the time he was shot his arm was extended. He shot from his automobile.

■ Dr. Fargason testified further: "Deceased made a statement about the shooting after he got to the hospital; as to what he said prior to making the statement that indicated that he knew about his condition, he said 'Doctor, he has got me, hasn't he?'" Defendant's counsel then stated: "We object to that on the general grounds." The court overruled that objection. No exception was reserved to this ruling. The witness testified further that the deceased lived thirty or forty minutes after he made the statement above as to his condition. The solicitor then asked the witness: "What do you say that he said about the shooting?" Defendant's counsel objected "on the general grounds." The objection was overruled, and the defendant excepted. Witness: "He said in answer to my question, 'Who shot first?', that Buddy shot first." The evidence shows that defendant was usually called "Buddy Pattillo." The witness testified: "That was the only statement deceased made; he complained about his pain of course; he was suffering a great deal."

This evidence shows, prima facie, that the statement was made by the deceased under a sense of impending death, and the ruling was free from error. Parker v. State, 165 Ala. 1, 51 So. 260.

■ The question put to the witness Corprew, the sheriff, referring to the defendant, "Have you granted him a permit, a license to carry a pistol?" and the negative answer of the witness that he had not, was permissible as going to show intent. Code 1940, Tit. 14, § 173.

■ The case was for the jury on the evidence adduced, and the affirmative charges requested in writing were refused without error, and the motion for new trial was properly overruled.

Affirmed.

GARDNER, C.J., and THOMAS and LIVINGSTON, JJ., concur.